## Yuster *v.* Keefe.

[No. 6,911.  Filed February 2, 1910.  Rehearing denied February 24, 1910.  Transfer denied November 18, 1910.]

1. Trusts.—*Constructive.*—*Fraud.*—A constructive trust is raised only in cases where actual or constructive fraud has intervened, and where it is necessary to do so to prevent injustice; and therefore such a trust cannot grow out of an express or implied, written or oral, declaration of trust. p. 465.

2. Trusts.—*Constructive.*—*Contracts.*—Defendant's failure to pay to plaintiff one-half of the profits from the lease of a building which he agreed to rent in his own name for the joint benefit of himself and the plaintiff does not raise a constructive trust in plaintiff's favor, there being no prior partnership nor business connection between them. pp. 465, 466.

3. Trusts.—*Fiduciary Relations.*—*Essentials of.*—A fiduciary relationship is shown by proof of a confidence reposed by one person in another, and by proof of some inequality, dependence, weakness of age or strength, business intelligence, knowledge, or other condition, giving an advantage to the one in whom confidence is reposed. p. 466.

4. Equity.—*Fraud.*—Equity seeks to protect against all fraud, but takes notice only of relations brought about by manipulations, concealment and fraud, made possible by disparity of information between the parties, and reposed confidence. p. 466.

5. Trusts.—*Express.*—*Parol.*—*Validity.*—An oral agreement by defendant to take a lease in his own name for the joint benefit of himself and the plaintiff constitutes an express trust, and is not enforceable. p. 467.

From Marion Circuit Court (15,866) ; *Henry Clay Allen,* Judge.

Action by Maurice L. Yuster against John Keefe.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*Morris M. Townley,* for appellant.

*Henry Warrum,* for appellee.

COMSTOCK, J.—In this action the court below sustained a demurrer, for want of sufficient facts, to the complaint, which, in substance, is as follows: In the latter part of the year 1906 appellant desired to open a lace and embroidery store in the city of Indianapolis, provided a desirable location could be found in the business section of such city. About this time negotiations were had between appellant and appellee, as the result of which they agreed to engage together in the lace and embroidery business, each to invest $3,500, and each to own a half interest in the business to be established. At this time there was no definite agreement between appellant and appellee as to whether the proposed business should be carried on as a partnership or a corporation. Pursuant, however, to the understanding had, appellant proceeded to search for a proper location in which such business might be conducted, and ascertained that an exceedingly desirable lease might be had upon a three-story brick building owned by Elizabeth New, and situated on Washington street, which is the main business thoroughfare of the city of Indianapolis. There were two storerooms on the lower floor, a basement beneath, and a number of rooms on the second and third floors. Appellant ascertained that this building could be leased for twelve years for an annual rental of $13,000. Appellant also ascertained that one of the storerooms on the ground floor could be sublet for an annual rental of $7,500, and that the rooms on the second and third floors could be sublet for $1,500 a year or more, so that any lessee of the building might sublet the rooms referred to, and still retain one storeroom on the ground floor at an annual rental of $4,000 or less. This storeroom was the same size of, and of equal rental value with, the other storeroom, which could be sublet for $7,500 a year. Because appellant and appellee had agreed to engage together in business, and because of the relationship thereby existing between them, appellant informed appellee of the facts concerning the New building. Appellant and

appellee verbally agreed with each other that they would lease such building and would use one of the storerooms on the ground floor for their proposed enterprise, and would sublet the remainder of the building on the best terms possible. Thereupon appellant and appellee took up negotiations with the agents of Elizabeth New, and it was verbally agreed that appellant and appellee should lease the building in question for a period of twelve years for the sum of $13,000 a year, and that Elizabeth New should make certain improvements in the building, at an approximate cost of $6,000, with the understanding that the cost of such improvements should be repaid by the lessees in monthly instalments, which monthly instalments should be added to the rental otherwise agreed upon. It was the original understanding between appellant and appellee that the lease upon the New building should be taken in their joint names, but subsequently, at the suggestion and request of appellee, it was agreed that the lease might be taken in appellee's individual name, and held for the common use and benefit of the two jointly. It was further agreed that simultaneously with the execution of the lease to appellee, appellee should execute to the partnership or corporation to be organized between appellant and appellee a lease upon the storeroom which they proposed to use for the conduct of their business. This lease was to run for the full period of twelve years, and the rental was to be determined by taking the entire annual rental payable by appellee to Elizabeth New and deducting therefrom the net annual rentals received by appellee from all other subtenants in the building. By this arrangement all benefits of the principal lease and of all subleases would inure to the benefit of appellant and appellee jointly. Appellant and appellee thereupon informed said agents of said arrangement, and thereupon appellee paid to them, as agents for Elizabeth New, the sum of $200, to be applied as rental upon the lease. Subsequently, but

prior to the execution of the lease, a dispute arose between appellant and appellee as to whether their proposed business should be carried on as a partnership, or whether a corporation should be organized for that purpose. This matter had not been covered by their previous negotiations. Not being able to arrive at a mutual understanding on that subject, the project of engaging together in the lace and embroidery business was abandoned. Subsequently, over appellant's protest, appellee executed a lease upon the New building upon the terms referred to. Appellant demanded that he be permitted to take a half interest in such lease, or that appellee take such lease as trustee for himself and appellant, which demands were refused. The rentals derived from sub-letting are more than $3,000 a year in excess of the rental payable to Elizabeth New. By reason of the agreement between appellant and appellee to engage together in the lace and embroidery business, and by reason of the fact that they were mutually engaged in an effort to procure a lease upon some desirable building for that purpose, appellant reposed a trust and confidence in appellee, and relied upon appellee to do nothing antagonistic to their mutual interests, and solely by reason of such trust, confidence and reliance, appellant informed appellee of the fact that the New building could be leased and subleased as before stated. By reason of such trust, confidence and reliance, appellant also consented that such lease might be taken in the individual name of appellee, upon the conditions before named. Had it not been for such trust, confidence and reliance appellant would not have informed appellee of the facts concerning such building, nor would appellant have consented that such lease be taken in appellee's individual name, but, on the other hand, appellant would have taken other steps to procure such lease and to protect his interests in the premises.

By reason of the foregoing facts, and the confidential and

fiduciary relationship existing between appellant and appellee, appellant contends that appellee should not be permitted to hold such lease for his individual benefit or otherwise than as trustee for himself and appellant. The complaint prays that there may be a decree compelling appellee to hold the lease as trustee for the equal benefit of himself and appellant, and that appellee may be compelled to account for any excess of rents received or to be received over and above the rental payable to Elizabeth New. The complaint contains an offer upon behalf of appellant to pay half of any loss which may result from ownership of such lease, and the additional offer to do such equity in the premises as may seem proper to the court.

Appellant declined to plead further, and judgment was rendered against him for costs.

The ruling of the court upon the demurrer is relied upon for reversal.

It is the claim of appellant that the averments of the complaint should show a constructive trust arising from the breach of a fiduciary relationship. We quote from the brief of appellant: "I have attempted to show that the trust sought to be enforced in this action is a constructive trust arising from the breach of a fiduciary relationship. I understand that the statute of frauds would be an obstacle to appellant's sole reliance upon any verbal promise. I expressly disclaim reliance upon any verbal promise as the basis of the trust which is sought to be enforced. If the verbal promise was out of the case entirely, and it merely appeared that appellee had taken advantage of the knowledge imparted to him by appellant and had taken the lease in question for his individual benefit, a constructive trust would have arisen upon the equitable principles already discussed."

The position of appellee is (1) that the complaint shows a verbal agreement to let another have an interest in land,

which agreement is not enforceable; (2) that the relationship set out as existing between the parties was not fiduciary, under the rule governing constructive trusts, but an ordinary business transaction out of which a constructive trust cannot be evoked.

The reading of the complaint discloses no deceit, fraud or circumvention or betrayal of confidence practised on appellant by appellee. Considering the question presented upon the proposition of appellant, Did said fiduciary relationship exist?

"The element essential to create a constructive trust is, that fraud, either actual or constructive, must have intervened. Such trusts are raised by courts of chancery only in cases where it becomes necessary to prevent a failure of justice, and in most cases where there is no intention or agreement of the parties to create such a relation." *Wright* v. *Moody* (1888), 116 Ind. 175, 179, 180, and cases cited. See, also, *Alexander* v. *Spaulding* (1903), 160 Ind. 176, and cases cited. It follows that a constructive trust cannot grow out of an express or implied, written or verbal, declaration of the trust. *Orth* v. *Orth* (1896), 145 Ind. 184, 32 L. R. A. 298, 57 Am. St. 185, and cases cited; 2 Pomeroy, Eq. Jurisp. (2d ed.) §1044; 1 Perry, Trusts (4th ed.) §166.

As appellant's right of action cannot therefore grow out of the verbal agreement "that the lease should be taken in appellee's name and held for the common use and benefit of the two jointly, * * * that appellee should execute to the partnership or corporation to be organized * * * a lease upon the storeroom which they [appellant and appellee] proposed to use for the conduct of their business," his right must rest upon the facts that appellant discovered the building subsequently leased, consented that the lease should be taken in the name of appellee, and made necessary payment out of his own funds.

There is no averment of any association or relationship—business or otherwise—existing between the parties prior to the transaction in question.

There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other. These conditions are not exhibited. Instead, the following situation is presented: Two men contemplate engaging in a commercial enterprise. They seek a building in which to carry on that business. The building is found by one of them. A lease is taken in the name of the one with the consent of the other, and said building is afterwards sublet by the lessee. The failure to agree upon the manner of conducting the business, whether as a partnership or a corporation, ends the business relations between them.

In addition, no fact, within the knowledge of appellee, was withheld from appellant. The parties failed to carry out the project in mind, as much through the fault of appellant as of appellee. There was nothing in the relations of the parties creating any other than the commonplace relations of ordinary business.

Equity seeks to protect against fraud in its infinite variety, but takes notice only of basic wrongs growing out of the relationship existing between the parties to a particular transaction and accomplished through manipulations, concealment and fraud made possible by the disparity between the parties as to information, intelligence and confidence inspired by previous dealings and associations.

We have considered the question upon the ground upon which counsel for appellant bases his argument, and con-

clude that the facts averred are not sufficient to cre-
ate a constructive trust. Apart from this view, we
are of the opinion that the only trust created was an.
express trust and in parol, and therefore not enforceable.
Judgment affirmed.