KOENIG, RECEIVER FOR ALDRICH-WILLIAMS, INC. *v.* LEAS.

[No. 29,918. Filed March 14, 1960. Rehearing denied April 26, 1960.]

450

*Rothberg, Gallmeyer, Doermer & Strutz,* and *George E. Fruechtenicht,* all of Fort Wayne, for appellant.

*Dunten & Arnold* and *L. H. Dunten,* of Fort Wayne, for appellee.

LANDIS, J.—This case comes to us on transfer from the Appellate Court pursuant to Burns' §4-215 (1946 Replacement),[1] the Appellate Court's opinion appearing in 157 N. E. 2d 846.

Appellee filed claim in the receivership proceedings of Aldrich-Williams, Inc., asking that appellant who is the receiver thereof, be ordered to pay over to appellee the sum of $5,295.00 as a preferred claim against said receivership and prior to the payment of general claims growing out of the alleged conversion of appellee's assets by the corporation.

Appellant receiver filed answer in bar and a second paragraph alleging appellee opened a checking account in the name of the corporation and over which he had authority to write checks; that appellee deposited $1,500.00 therein (which is part of the money he claimed was converted) and thereafter funds of the corporation from another bank were transferred to this account and were commingled with the funds in this account. That appellee was not entitled to the preferred status he claimed.

---

1. Acts 1901, ch. 247, §10, p. 565; 1933, ch. 151, §1, p. 800.

Reply to the answer was filed and upon the issues submitted the court entered a finding and judgment for appellee-claimant in the amount of $5,155.72 and that said sum was held in trust for the benefit of said appellee.

Appellant's motion for new trial alleging the decision was contrary to law and not sustained by sufficient evidence, was overruled. He appeals from the judgment. The facts necessary for a consideration of this case follow.

Appellee-claimant was a practicing attorney of Fort Wayne, Indiana, for thirty years. In June 1955, W. R. Aldrich went to see appellee-claimant as an attorney and thereafter frequently consulted with him with reference to difficulties he (Aldrich) was having with B. K. Williams in the management of Aldrich-Williams, Inc., an automobile agency. Aldrich was Vice President-Secretary, and Williams was President-Treasurer of the corporation. The corporation had a capital stock of $24,000.00, of which amount Aldrich had invested $2,500.00, Williams $1,500.00, and twelve other investors the remaining $20,000.00. There were no stockholders or directors meetings called or held, no by-laws were prepared or adopted, no resolutions were entered of record, nor were any stock certificates issued.

Appellee-claimant suggested to Aldrich sometime in June of 1955 that he would invest $5,000.00 in the corporation if Williams would withdraw, the corporate books were brought up to date and the other stockholders would approve. This was submitted to Williams who was agreeable to the proposition and appellee-claimant prepared an instrument called a "separation agreement" providing for Williams to withdraw from the corporation in consideration for which Aldrich agreed to pay Williams $1,600.00 to satisfy all claims Williams might

have. The agreement provided an additional $5,000.00 would be paid Williams when all adjustments were completed. The agreement was signed by Aldrich and Williams on July 11, and a check for $1,600.00 was delivered by Aldrich to Williams.

On July 16, 1955, appellee-claimant and Aldrich opened a new checking account in the name of Aldrich-Williams, Inc.. Appellee-claimant deposited $1,500 to this account, signed a bank signature card at the Dime Trust and Savings Bank with appellee-claimant designating himself as Treasurer and Aldrich as Secretary of the corporation. Appellee-claimant suggested the corporation should transfer its operating account from the Lincoln National Bank and Trust Company to the Dime Bank. The Dime Bank account was thereafter used by Aldrich and the bookkeeper as the general operating account for the business.

On July 18, 1955, appellee went on a trip to Florida in a new Packard company car and left his 1954 Cadillac with Aldrich for sale. On his return a week later he learned his Cadillac had been sold for $3,795.00, $2,100.00 of which was cash and the balance represented by a 1951 Cadillac. The $2,100.00 was deposited by the bookkeeper in the Dime Bank and the 1951 Cadillac placed on the company's used car lot.

A certificate of corporate authority authorizing appellee and Aldrich to sign checks as officers, was prepared at the instance of the Dime Bank and signed by Aldrich as Secretary and attested by appellee as a director. It stated Aldrich was President and/or Secretary and that appellee was Vice-President and/or Treasurer. This was filed with the Dime Bank. Although a formal resolution to that effect was prepared by appellee, no corporate action was ever taken on it.

It further appears that a Mr. and Mrs. Hetzel desired

to invest in the new business, and that appellee and Aldrich in discussing the reorganization had considered that a new name for the corporation could be "Aldrich-Packard, Inc.". The Hertzels delivered a check in the amount of $1,000.00 and a receipt was given to them in the name of "Aldrich-Packard, Inc." At appellee's and Aldrich's direction the check was deposited in the Dime Bank account of Aldrich-Williams, Inc.

On August 12, 1955, a meeting was held between Aldrich, appellee, Williams, the bookkeeper and a representative of the Studebaker-Packard Corporation, and the transfer of the franchise was discussed. Williams refused to assign his interest until he was paid the balance of $3,500.00 provided in the separation agreement. Aldrich left the meeting to raise the money, and telephoned back to say he had borrowed it and was depositing it in the Dime Bank account. The bookkeeper prepared a check payable to Williams for $3,500.00 and appellee signed it "Aldrich-Williams, Inc—Fay W. Leas." The check was delivered to Williams and honored by the Dime Bank.

Appellee stated that he probably knew prior to this that the corporation's deposits in the Lincoln Bank had been transferred to the Dime Bank.

On August 18, 1955, appellee discovered that two new automobiles had been sold during the months of July and August without paying the Commercial Credit Corporation, which had floor-planned the cars. The purchasers were demanding their titles. Appellee checked into the financial condition of the corporation with the bookkeeper, drawing up a rough balance sheet which indicated the corporation was insolvent. Appellee went to Aldrich's house and they discussed the Commercial Credit Corporation debt and the possibility of a receivership. It was agreed that the corporation would sell

at auction several used automobiles in order to pay off Commercial Credit Corporation.

On August 23, 1955, which was the same day as the auction, Aldrich withdrew the funds from the Dime Bank without appellee's knowledge and deposited them in the Anthony Wayne Bank. He then paid off Commercial Credit with money from the proceeds of the auction sale.

On August 26, 1955, the petition for receivership was filed, appellant was appointed receiver and took over all bank accounts and all the stock of automobiles including the 1951 Cadillac.

On September 29, 1955, appellee filed his claim in the receivership proceedings asking for a preference over general creditors because of the alleged conversion of appellee's assets by the corporation giving rise to a trust relationship.

Appellee has conceded in his briefs on this appeal that neither an express nor a resulting trust was created in the case at bar, but the argument has centered instead over the existence of a constructive trust.

This court has heretofore observed that while there is no unyielding rule or formulae for describing a constructive trust with exactness, the following definition from Bogert Trusts & Trustees, ch. 24, §471, p. 8, is in close conformity with the decisions of this jurisdiction, viz.:

> " 'A constructive trust, or as frequently called an involuntary trust, is a fiction of equity, devised to the end that the equitable remedies available against a conventional fiduciary may be available under the same name and processes against one who through fraud or mistake or by any means ex maleficio acquires property of another.' " See: *Brown* v. *Brown* (1956), 235 Ind. 563, 567, 135 N. E. 2d 614, 616.

In order to establish the existence of fraud in this case appellee places considerable reliance on the existence of a fiduciary or confidential relation as a result of which appellee was overreached or taken unfair advantage of by Aldrich. Was there such a fiduciary or confidential relationship here?

The case of *Westphal* v. *Heckman* (1916), 185 Ind. 88, 93, 113 N. E. 299, 301, in an opinion by Lairy, J., discusses the aspects of such a relation, as follows:

"There are certain legal and domestic relations in respect to which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relations of attorney and client, principal and agent, husband and wife, and parent and child belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, the law will presume that improper influence was exerted and that the transaction is fraudulent. *Keys* v. *McDowell* (1913), 54 Ind. App. 263, 100 N. E. 385, and cases there cited.

"This so-called presumption, when indulged, arises out of relations which exist between the contracting parties regardless of any facts or circumstances having a tendency to show that a confidence was reposed by one of the parties and an influence gained by the other. Proof of the existence of such a relation between the parties establishes *prima facie* that the dominant party to such relation occupies a position of trust and confidence which he must not abuse. *This rule, however, is applied only as against the one who is assumed to be the dominant party in the relation shown.* In the relation of parent and child the parent is assumed to be the dominant party, and, where one seeks to show that the child is the dominant party, he must do so by showing that the condition and situation of the parties, their treatment of each other, and other circumstances from which such ultimate fact may be inferred, . . . .

This court has held that no presumption of fraud or undue influence arises in a case of a conveyance from a parent to a child on account of the mere existence of such relation. In the case of *Teegarden* v. *Lewis* (1895), 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9, it was said, 'Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity.' 2 Pomeroy, Eq. Jurisp. §962; 1 Bigelow, Law of Fraud 357; *Saufley* v. *Jackson* (1856), 16 Tex. 579; *Wessell* v. *Rathjohn* (1883), 89 N. C. 377, 45 Am. Rep. 696; *Beanland* v. *Bradley* (1854), 2 Smale & G. 339; *Tenbrook* v. *Brown* (1861), 17 Ind. 410; *Slayback* v. *Witt* (1898), 151 Ind. 376, 50 N. E. 389; and cases there cited. . . ." (Emphasis added.)

And in the case of *Yuster* v. *Keefe* (1910), 46 Ind. App. 460, 466, 90 N. E. 920, 922 (transfer denied), it is stated:

"There is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but *there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence,* [etc.] *. . . giving to one advantage over the other. . . .".* (Emphasis added.)

The relationship of appellee and Aldrich was that of attorney and client with appellee, the attorney, claiming to have been overreached or taken advantage of by Aldrich—the client. This is the alleged case of the experienced being victimized by the inexperienced, the teacher being confounded by the pupil, the dog being bitten by the man. And yet in view of the relationship of the parties it must be assumed the attorney had the superior training, intelligence and experience to that of the client who had consulted the attorney initially for advice as to the corporation's troubles. That the problems of the corporation were no bed of roses should

not have come as a surprise to appellee when he was consulted as an attorney about the matter in the first place.

Certainly no fraud or undue influence will be *presumed* from the mere fact of the relationship of client and attorney existing between Aldrich and appellee, and therefore if fraud, undue influence or overreaching are to be found so as to sustain appellee's theory of a trust they must be supported by the evidence. What is the evidence in this case which might give rise to a constructive trust?

Appellee concedes he suggested to Aldrich transferring the general corporation account from the Lincoln Bank to the Dime Bank but now he complains of the commingling because Aldrich transferred the corporate account to the Dime Bank account which appellee and Aldrich had previously opened. That appellee also treated the account in the Dime Bank as the corporate account is apparent from appellee's opening of the account with Aldrich in the name of "Aldrich-Williams, Inc." and signing the signature card as "Treasurer." If any doubt lingered as to whether this was a corporate account it was dispelled when appellee as a director and Aldrich as Secretary signed for the bank a certificate of corporate authority empowering appellee and Aldrich to sign checks on the account as officers of the corporation. The principles of estoppel would prevent appellee or Aldrich from denying this account they opened in the name of the corporation was not the corporate account. The rights of persons doing business with a corporation should not be placed in jeopardy by the implication of a trust in equity when there was no fraud or overreaching against appellee but the parties in the name of the defaulting corporation by their outward actions demonstrated that they

treated the account as a corporate bank account of Aldrich-Williams, Inc. See: 89 C. J. S., "Trusts," §151, note 63, p. 1051.

Appellee acknowledges he knew of the transfer by Aldrich of the funds of the corporation from the Lincoln Bank to the Dime Bank prior to August 12, 1955. On the latter date appellee directed the deposit of $1,000.00 from the new investors Hetzel to the Aldrich-Williams, Inc. account in the Dime Bank. He then wrote a check on the account payable to Williams in the amount of $3,500.00 paying off Williams' interest as per the separation agreement and signed it "Aldrich-Williams, Inc. —Fay W. Leas." Appellee was obviously a participant in the commingling from which he now asks to be extricated by a court of equity.

The record does not disclose that the title to the 1951 Cadillac which was traded in on appellee's 1954 Cadillac as per his instructions, was registered in appellee's name or in trust for him. The ledger sheet of the corporation which appellee says shows a trust, does not make any mention of a trust whatever.

We recognize that in reviewing the record evidence to determine whether the decision of the court below is sustained by sufficient evidence, we are to look only to the evidence favorable to appellee. However, we are unable to find any evidence in this case of any fraud, overreaching, or abuse of a confidential relation on the part of Aldrich or anyone else, which could be said to have misled appellee. The most that can be said by appellee is that his investments in the corporation were contingent on the separation of Williams from the corporation, appellee's acceptance into the corporation and the completion of the organization of the corporation, the calling of stockholders and directors meetings, etc. Some of these things were

accomplished before the insolvency and receivership, some were not. But the important thing is there isn't a shred of evidence to connect Aldrich or anyone else with any misrepresentations or fraudulent promises to appellee which misled appellee into investing into the corporation. After he invested there appear to have been some transfers from bank to bank of the corporate bank account, some of which appellee knew about and some of which he didn't. While this conduct by Aldrich may have been irregular as far as good corporate business practices are concerned, there is no showing that any fraudulent conduct or means ex maleficio on the part of Aldrich or anyone else thereafter induced or misled appellee to invest in the corporation as is necessary to give rise to a constructive trust. But it is the fraud or undue influence inducing the acts of the victimized party based thereon that justifies the court in constructing a trust. That this is a necessary requisite is recognized by many cases of this jurisdiction and elsewhere. See: *Vance* v. *Grow* (1934), 206 Ind. 614, 190 N. E. 747; *Westphal* v. *Heckman* (1916), *supra*, 185 Ind. 88, 113 N. E. 299; *Alexander* v. *Spaulding* (1903), 160 Ind. 176, 66 N. E. 694; *Moore* v. *McClain* (1918), 68 Ind. App. 102, 119 N. E. 258; 89 C. J. S., "Trusts," §139, c, p. 1023; *Halper* v. *Homestead Building & Loan Ass'n* 59 N. Y. S. 2d 689.

As the record is barren of evidence of fraud, overreaching, violation of a confidential relation, or any means ex maleficio necessary to give rise to a constructive trust, which appellee concedes is the only trust upon which he places reliance on this appeal, we are constrained to hold that the decision of the court below was not sustained by sufficient evidence and that the court therefore erred in overruling appellant's motion for new trial.

Judgment reversed.

Arterburn, C. J., and Jackson and Bobbitt, JJ., concur.

Achor, J., not participating because of illness.

NOTE.—Reported in 165 N. E. 2d 134.