**Jack SCHWARTZ, as Trustee of the Schwartz Medical Group Employee Pension Plan, Plaintiff,**

v.

**James OBERWEIS, Defendant.**

**Civ. No. H92–288.**

United States District Court, N.D. Indiana, Hammond Division.

June 22, 1993.

---

Bruce D. Brattain, Jeffrey B. Bailey, Indianapolis, IN, for plaintiff.

Kevin W. Murphy, Chicago, IL, for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant, James Oberweis' ("Oberweis"), Motion to Dismiss, filed on October 7, 1992. For the reasons set forth below, Oberweis' Motion is **DENIED IN PART** and **GRANTED IN PART.**

BACKGROUND

Jack Schwartz ("Schwartz") is the Trustee of the Schwartz Medical Group Employee Pension Plan (the "Plan") and, as such, has investment discretion to control the assets of the Plan. As Trustee for the Plan, Schwartz opened a brokerage account with Oberweis Securities, Inc. ("OSI"), and over a period of years engaged in a pattern of investment in conservative high quality instruments, including stocks and bonds. Through the years, Schwartz developed a substantial degree of trust in the honesty and integrity of Defendant Oberweis, a broker/dealer, and believed that Oberweis would not recommend any investments which were not in the best interest of the Plan.

On or about October 30, 1987, Oberweis contacted Schwartz and attempted to convince him to enter into a Secured Demand Note ("SDN") and Secured Demand Note Collateral Agreement for Equity Capital ("Collateral Agreement") to finance OSI, the securities broker-dealer which is owned and controlled by Oberweis. In October 1987, Schwartz entered into the SDN and Collateral Agreement with OSI. The Plan pledged approximately $928,826 of blue chip marketable securities to serve as collateral for the SDN. Oberweis convinced Schwartz that immediate execution of the documents was necessary. Oberweis sent a messenger and hand-delivered the SDN and Collateral Agreement from his offices in Chicago to Schwartz's office in Munster, Indiana. The messenger waited while Schwartz executed the documents, without being permitted time or opportunity to seek other additional outside independent advice as to the propriety of investing in the SDN and Collateral Agreement. Oberweis recommended that the Plan pursue this course of action in order to obtain "equity capital" for OSI. OSI was to pay the Plan 2% per annum as consideration for entering into the SDN/Collateral Agreement, and was to return the SDN and the collateral to the Plan after 3 years.

Oberweis, or someone at OSI under the direction and control of Oberweis, decided to sell all of the collateral for the SDN without providing a notice of demand for payment of the $400,000 principal under the terms of the SDN. By doing so, Schwartz, on behalf of the Plan, was precluded from meeting the required payment under the terms of the SDN. The SDN would have permitted Schwartz to make a cash loan of $400,000 to OSI. This would have fully satisfied the requirements of the SDN and Schwartz, on behalf of the Plan, would have then been free to withdraw the collateral.

As of July 1990, OSI was placed in Chapter 7 bankruptcy. Based on his belief that $550,000 would be protected under The Securities Investor Protection Act of 1970 ("SIPA"), Schwartz, on behalf of the Plan, submitted a claim to the Trustee in liquidation of OSI. On or about October 30, 1990, Schwartz, on behalf of the Plan, received notice that SIPA coverage was unavailable and for the first time became aware of the extent of the loss by the Plan. After becoming aware of the loss, Schwartz began to investigate and discovered the alleged fraud and misstatements made to him by Oberweis.

A Securities Investor Protection Corporation ("SIPC") trustee was appointed to administer the OSI liquidation. SIPC Trustee for the OSI liquidation initiated an adversary proceeding against the Plan. On January 28, 1992, the SIPC Trustee settled its litigation with the Plan, purportedly to dispose of the pending Customer Claims of the Plan against the Trustee. The settlement agreement did not purport to release Oberweis individually from suit on any of he claims brought by Schwartz on behalf of the Plan. On August 24, 1992, the Plan filed this action against Oberweis individually.

The eight-count Complaint alleges that Oberweis individually violated Indiana's Blue Sky Law and conversion statute, committed actual and constructive fraud, breached a fiduciary duty to the Plan and breached a contract with the Plan, acted negligently and

negligently misrepresented certain facts. Schwartz claims that Oberweis made material misstatements of fact in regard to the SDN and the Collateral Agreement. Schwartz alleges that Oberweis stated that the SDN was a suitable investment for the Plan when in fact it would have only increased the yield to 2% of the $400,000 face amount of the SDN while subjecting the entire amount of the collateral to risk of loss. Schwartz argues that Oberweis omitted facts necessary, in light of the statements made, to make those statements not misleading. In addition, Schwartz claims that Oberweis failed to state that by executing the SDN, the Plan would cease to be covered by and unable to avail itself of the protection provided by SIPA. Schwartz further claims that Oberweis failed to disclose that entry into the SDN was, in essence, an equity investment in OSI with a maximum return of two percent of the face amount of the SDN with an unlimited risk and that Oberweis failed to disclose the weakened financial condition of OSI and the resulting increased risk to the Plan.

DISCUSSION

When deciding a motion to dismiss, this Court must assume the truth of a plaintiff's well pleaded factual allegations, making all possible inferences in the plaintiff's favor. *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991); *Janowsky v. United States,* 913 F.2d 393, 395 (7th Cir.1990). This Court may not dismiss the plaintiff's complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Barnhart v. United States,* 884 F.2d 295, 296 (7th Cir.1989), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987).

*Statute of Limitations*

Oberweis asserts that many of Schwartz's claims are barred by the relevant statutes of limitation. The Indiana Blue Sky Law statute of limitations precludes a cause of action brought three years after a plaintiff's discovery of an alleged violation. Ind. Ann.Code § 23–2–1–19(g) (West 1988). Oberweis alleges that the Complaint states only one specific date of misconduct occurring on October 30, 1987. However, the Complaint clearly states that Schwartz did not learn of the alleged violations, fraud, and misrepresentations until October 30, 1990, well within the statute of limitations period.

Contrary to the assertion of Oberweis, this is not an insufficient factual allegation to toll the running of the three-year limitation. Further, Oberweis states no authority for his position that the limitations period should not be tolled. In *Arnold v. Dirrim,* 398 N.E.2d 426, 440 (Ind.App.1979), the Indiana Court of Appeals clearly stated that the party asserting the statute of limitations as an affirmative defense bears the burden of going forward with evidence that the claim is barred. Schwartz affirmatively pled that he was unaware of the alleged violations until October 1990 when he learned that SIPA coverage was being denied to the Plan. Schwartz has met his burden of pleading. Moreover, when Schwartz discovered the alleged securities violations is a fact question for the jury to decide. Accordingly, Schwartz's Indiana Blue Sky Law claim cannot be dismissed as time barred.

Oberweis also alleges that the claims for conversion and negligence are also barred by the statute of limitations. The statute of limitations for both claims is two years. For the reasons set forth above, Oberweis' motion to dismiss the conversion and negligence claims must be denied. If a jury finds that Schwartz did not learn of the alleged violations until he learned that the Plan was not protected by SIPA coverage, the statute of limitations ran at that time. The Complaint in this action was filed on August 24, 1992, well within the two year limitations period.

*Indiana Blue Sky Law*

Relying on *S.E.C. v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), Oberweis alleges that the SDN and Collateral Agreement are not securities and are

therefore not covered by Indiana Blue Sky Law. However, the *Howey* test is used for determining the existence of an investment contract, not to determine whether a note is a security. The security at issue here is a secured demand note, not an investment contract. The correct test for determining whether a note is a security is articulated in *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1989).

■ Indiana Blue Sky Law provides that the term security "means a note". Ind. Ann.Code § 23–2–1–1(k) (West 1989). Indiana's definition of a security is substantially similar to Congress' definition under the Securities Act of 1933. *See* 15 U.S.C. § 77a *et seq.* (1993). Given a lack of Indiana law on the subject, the Court will turn to an established body of federal law to determine whether the SDN and Collateral Agreement are securities. Because Indiana law defines a note as a security, there is a presumption that every note is a security. *See Reves*, 494 U.S. at 64–66, 110 S.Ct. at 951. However, this presumption is not irrebuttable. *Id.* The presumption may be rebutted by showing that the note is one listed on the Second Circuit Court of Appeals' laundry list of notes which are not securities, *see Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 939 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), or by showing that the note bears a strong resemblance to one of the notes on the list by considering the following four factors.

■ First, the motivations of the seller and purchaser must be reviewed. *Reves*, 494 U.S. at 64–66, 110 S.Ct. at 951. If the seller's purpose is to raise money for general use of a business enterprise or to finance investments, and the buyer is primarily interested in profit, the instrument is a security. *Id.* 494 U.S. at 64–68, 110 S.Ct. at 951–52. In this case Oberweis, the seller, was interested in raising equity capital for OSI. Oberweis promised Schwartz a two percent return on the face amount of the SDN. The yield on the investment in the SDN would have added to the return on the assets of the Plan. Schwartz was interested in the profit of the investment for the Plan and for no other reason. According to the first prong of

the *Reves* test, the SDN and Collateral Agreement are securities.

■ The second inquiry in the *Reves* test is the method of distribution of the instruments in question. *Id.* 494 U.S. at 66–68, 110 S.Ct. at 952. Secured demand notes are not traded on an exchange. This, however, does not end the inquiry. It is not necessary for an instrument to be actively traded to meet this prong of the *Reves* test. Oberweis sold SDN investments to a number of investors. The SDN method of financing is well known among members of the brokerage community and these types of investments play a substantial role in the financing of brokerage firms. Short term subordinated notes used by brokerage houses are securities under both the Securities Act of 1933 and the Securities Exchange Act of 1934. *Allegaert v. Chemical Bank*, 657 F.2d 495, 507 (2d Cir. 1980). The wide use and sales of SDNs to several individuals satisfies the requirements of the second prong of the *Reves* test.

The third factor for consideration is the reasonable expectation of the investing public. *Reves*, 494 U.S. at 66–68, 110 S.Ct. at 952. It is clear from the Complaint that Schwartz thought he was making an investment in a security for the benefit of the Plan, as he had done so in the past. The Court finds this expectation to be reasonable.

The final factor in the *Reves* test is the existence of some risk-reducing mechanisms, such as a regulatory scheme, which may remove the need for protection of the securities laws from the transaction in question. The SDN, rather than enhancing protection to investors, removed the protection provided by the SIPA and SIPC insurance. The lack of any special protection indicates that the SDN is a security under the test set out in *Reves*. Based on these factors, the Court finds that Oberweis has failed to rebut the presumption that the SDN and Collateral Agreement is a "note" and therefore a security under Indiana law. Therefore, Oberweis' Motion to dismiss Schwartz's Indiana Blue Sky Law claim on the ground that the SDN and Collateral Agreement are not securities must be denied.

Oberweis next claims that even if the SDN is found to be a security, the statements made by Oberweis, or any failure by Oberweis to make any statements are not actionable under Indiana Blue Sky Law. The Court finds that the misstatements and omissions of fact alleged in the complaint at paragraphs 15 and 16 are sufficient to be actionable under the Indiana Blue Sky Law. This will be more fully addressed in the discussion of actual and constructive fraud.

*Conversion*

Oberweis contends that Schwartz's conversion claim should be dismissed for three additional reasons: 1) failure to allege the requisite intent on the part of Schwartz; 2) failure to allege that any actions by Oberweis were unauthorized; and 3) failure to allege unauthorized control over Schwartz's property as required by the statute.

 Conversion consists of the appropriation of personal property of another to one's own use and benefit in exclusion and defiance of the owner's rights and under an inconsistent claim of title. *Yoder Feed Service v. Allied Pullets, Inc.*, 171 Ind.App. 692, 359 N.E.2d 602, 604 (Ind.App.1977). A complaint which alleges that the plaintiff is the owner of property, is entitled to possession of the property, that the defendant converted the property to his own use, and that the plaintiff has been damaged is sufficient to support a claim of conversion. . *Seip v. Gray*, 227 Ind. 52, 83 N.E.2d 790, 792 (1949); *Kroger Laundry & Dry Cleaners, Inc. v. Williams*, 221 Ind. 299, 47 N.E.2d 612, 612 (1943). The essential elements that must be pled in a conversion complaint are an immediate, unqualified right to possession of the property resting on superior claim of title. *Yoder*, 359 N.E.2d at 604. Intent is not a necessary element to be pled for a conversion claim to be viable. The only authority that Oberweis offers for this proposition are cases which deal with criminal conversion, in which knowledge must be proved. *See Coffel v. Perry*, 452 N.E.2d 1066 (Ind.Ct.App.1983); *Ft. Wayne Nat'l Bank v. Scher*, 419 N.E.2d 1308 (Ind.Ct.App.1981). There exists no corollary for a knowledge requirement in a civil action for conversion. Accordingly, it is unnecessary for Schwartz to allege that Oberweis had a particular state of mind or knew that his control was unauthorized.

 Regardless of Oberweis' legitimate possession of the property, conversion occurs when the property is treated as the property of the holder in derogation of the rights of the true owner. *Yoder*, 359 N.E.2d at 604. Clearly, the original possession in this case was proper. Schwartz has alleged sufficient facts to show that the possession ceased to be proper when Oberweis, or someone in his control, sold all of the collateral securing the SDN without first notifying Schwartz and distributed the proceeds to OSI or its creditors. The Court finds Oberweis' third contention specious as it is not necessary for Schwartz to allege that Oberweis physically had his hands on Schwartz's securities, but that he had the capacity to control such, which Schwartz has alleged.

*Breach of Fiduciary Duty*

 Oberweis claims that there is no fiduciary duty between a broker and a customer. However, it is well accepted that a broker is a fiduciary to his client. *United States v. Dial*, 757 F.2d 163, 168 (7th Cir. 1984), *cert. denied*, 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985); *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 418 (9th Cir.1984). Oberweis was in a position of superior knowledge and understanding when he recommended to Schwartz that he invest in the SDN for the benefit of the Plan. Furthermore, the existence of a fiduciary duty is a question of fact to be determined by the trier of fact. *Congregation of the Passion, Holy Cross Province v. Kidder, Peabody & Co.*, 800 F.2d 177, 182 (7th Cir. 1986); *Fey v. Walston & Co.*, 493 F.2d 1036, 1049 (7th Cir.1974). It would therefore be improper to dismiss Schwartz's claim for breach of fiduciary duty.

*Constructive and Actual Fraud Claim*

Oberweis claims that Schwartz's actual and constructive fraud claim should be dismissed for several reasons. First, Oberweis claims that the only identifiable representations in Schwartz's ·Complaint concern representations made about hypothetical and contingent

future events, which are not actionable. Second, Oberweis claims that with respect to both counts, the Complaint fails to allege an actionable misstatement of fact and does not allege with requisite particularity the time and place of any misrepresentations or omissions to make the required statements.

■■■ Indiana courts require an actionable misrepresentation to be "of past or existing fact". *Smith v. Colgate–Palmolive Co.*, 752 F.Supp. 273, 278 (S.D.Ind.1990), *aff'd*, 943 F.2d 764, (7th Cir.1991); *Rice v. Rent–A–Center of America, Inc.*, 664 F.Supp. 423, 429 (N.D.Ind.1987); *Groves v. First Nat'l Bank*, 518 N.E.2d 819, 829–30 (Ind.Ct.App.1988). From reviewing Plaintiff's Complaint, specifically allegation numbers 15 and 16, it is clear that Schwartz has adequately pled specific misstatements or omissions of past or current fact, and are not statements that entail the future profitability of the SDN and Collateral Agreement.

■■■ Oberweis also claims that Schwartz has failed to allege with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, the time, place, and specific nature of the fraud. *Frank E. Basil, Inc. v. Leidesdorf*, 713 F.Supp. 1194, 1198 (N.D.Ill. 1989). Oberweis asserts that Schwartz failed to allege that Oberweis either knowingly or recklessly made false representations, or that a particular relationship was established giving Schwartz an unusual entitlement to rely on Oberweis. In Indiana, the elements of actual fraud are: 1) a material misrepresentation of past or existing fact by the party to be charged; 2) was false; 3) was made with knowledge or in reckless ignorance of the falsity; 4) was relied upon by the complaining party; and 5) proximately caused the complaining party injury. *Pugh's IGA, Inc. v. Super Food Services, Inc.*, 531 N.E.2d 1194, 1197 (Ind.Ct.App.1988). Oberweis is correct that Schwartz has failed to allege that the misrepresentations were made with knowledge or in reckless ignorance of their falsity.

■■■ Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Although Schwartz does not mention the magic words "knowledge" or "reckless ignorance of falsity", the Court finds that the requirements of Rule 9(b) have been met by inferences that may be drawn from Oberweis' actions, which have been stated with particularity as required by the Rule. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, pursuant to Rule 8(f) of the Federal Rules of Civil Procedure, "[A]ll pleadings shall be so construed as to do substantial justice." Paragraph 14 of the Complaint states that the events occurred on October 30, 1987, and paragraphs 16 and 17 specify the manner of the false statements and the place of the misrepresentations and omissions. Further, paragraph 14 of the Complaint specifies that Oberweis personally made such representations. Paragraphs 28, 33, 37, 43, 50, 53, and 58 each specify the damages and consequences of Oberweis' alleged misrepresentations and omissions.

■■■ Oberweis similarly claims that Schwartz has failed to allege the existence and unfair exploitation of a confidential relationship as is required to make out a constructive fraud claim. This Court disagrees for two reasons. First, Indiana courts hold that "a confidential relationship between the parties is not essential to the findings of constructive fraud, as Indiana recognizes the concept of 'fraud in law' or 'legal fraud' wherein the key emphasis is the inherent likeliness of conduct to create an injustice." *McDaniel v. Shepherd*, 577 N.E.2d 239, 242 (Ind.Ct.App.1991); *Scott v. Bodor*, 571 N.E.2d 313, 324 (Ind.Ct.App.1991). The elements of a constructive fraud claim are 1) the existence of a duty due to a relationship between the parties; 2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate cause thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Pugh's*

*IGA,* 531 N.E.2d at 1197. Secondly, the Court finds that Schwartz has pleaded facts to state a claim based upon constructive fraud. Paragraph 6 of Schwartz's Complaint states that Schwartz opened a brokerage account with OSI and over the years had engaged in a period of investment in conservative, high quality, instruments, including both stocks and bonds. Paragraph 7 alleges that Oberweis and other agents of OSI developed a relationship of trust and confidence with Schwartz and had always adhered to their fiduciary duty as registered broker-dealers. In paragraph 8 Schwartz alleges that he developed a substantial degree of trust in the honesty and integrity of Oberweis, and believed that he would not recommend any investments which were not in the best interest of the Plan. Paragraphs 15 and 16 then state why Oberweis' recommended investment in the SDN and Collateral Agreement was not a suitable investment for the Plan and was in fact a very risky investment for a pension plan.

*Negligent Misrepresentation*

Oberweis claims that Schwartz fails to state a claim for negligent misrepresentation because Indiana does not recognize such a tort. Although at one time it was uncertain to what extent Indiana recognized the tort of negligent misrepresentation, it is now clear that Indiana does not recognize the tort of negligent misrepresentation to include the giving of negligent professional advice. *See Emmons v. Brown,* 600 N.E.2d 133, 135 (Ind.Ct.App.1992); *Nicoll v. Community State Bank,* 529 N.E.2d 386, 391 (Ind.Ct.App. 1988). Accordingly, Oberweis' Motion to Dismiss in this regard must be granted.

*Breach of Contract*

Oberweis claims that this count should be dismissed because the requirement of contractual privity still applies to actions based on or sounding in contract. In support thereof, Oberweis cites cases which involve liability for breach of warranties in connection with a sale of goods. *See Candlelight Homes, Inc. v. Zornes,* 414 N.E.2d 980, 981–82 (Ind.Ct.App.1981); *Lane v. Barringer,* 407 N.E.2d 1173, 1175 (Ind.Ct.App.1980). Clear-

ly, this case does not involve the sale of goods. With no other authority for this proposition under Indiana or other persuasive law, Oberweis' Motion to Dismiss must be denied in this respect. However, the Court is willing to revisit this issue in a motion for summary judgment if said issue is properly briefed by Oberweis.

CONCLUSION

Oberweis' Motion to Dismiss is **GRANTED** as to Schwartz's negligent misrepresentation claim and **DENIED** in every other respect.