498 So.2d 923 (1986)
BARNETT BANK OF WEST FLORIDA, Petitioner,
v.
W. Richard HOOPER, Respondent.
No. 67777.
Supreme Court of Florida.
December 11, 1986.
Rehearing Denied January 5, 1987.
*924 Robert P. Gaines of Beggs & Lane, Pensacola, for petitioner.
Donald H. Partington and Robert D. Hart, Jr. of Clark, Partington, Hart, Larry, Bond and Stackhouse, Pensacola, for respondent.
James L. Bacchus and Susan V. Wheeler of Akerman, Senterfitt & Eidson, Orlando, for Florida Bankers Association, amicus curiae.
SHAW, Justice.
We review Hooper v. Barnett Bank, 474 So.2d 1253 (Fla. 1st DCA 1985), because of express and direct conflict with Milohnich v. First National Bank, 224 So.2d 759 (Fla. 3d DCA 1969). We have jurisdiction. Art. V, § 3(b) (3), Fla. Const.
Dr. W. Richard Hooper moved to Pensacola in 1973 and began doing business with the Barnett Bank of West Florida. In June of 1981, Hooper met with Joe G. Hosner, an attorney and customer of the bank, to discuss tax shelter investments. Hosner took Hooper to see Edwin Riffel, the loan officer in charge of Hosner's accounts at the bank. According to the testimony of Hooper, Riffel told him at this meeting that he was familiar with Hosner Investments and that they were sound and had passed Internal Revenue Service scrutiny. Hooper borrowed $50,000 from the bank which he placed with Hosner as a tax shelter investment.
During the spring of 1982, Harry Stump, the assistant vice president of the bank became suspicious that Hosner was involved in a check kiting scheme. He passed this information on to Riffel. On May 11, Stump instructed bank employees to make copies of the checks which were being deposited to the Hosner account, and to send copies to him prior to crediting the account. Stump testified that by May 14 the situation had deteriorated to the point that he felt that the bank was at risk, and in an effort to protect the bank he returned all Hosner checks presented on May 13 as drawn against uncollected funds.
Late in the afternoon of May 14, Hooper returned a call from Hosner who put him on hold. Hosner came back on the line with Riffel and during the ensuing three-way conversation, Hooper asked to borrow $90,000 for an investment which Riffel, according to his trial testimony, assumed was to be with Hosner. A promissory note prepared by Riffel and a check representing the proceeds of the loan in the sum of $89,865 were delivered to Hooper after banking hours by a messenger from Hosner's office. The check, bearing Hooper's endorsement and the stamp, "For Deposit Only, Hosner Enterprises, Inc., XXXXXXXXXX," was deposited into the Hosner account. By May 24 the check kiting scheme was confirmed, but because of the Hooper deposit, Barnett was able to zero out the Hosner account. Stump admitted at trial that without the deposit, Hosner's account would have been overdrawn approximately $87,000.
Hooper sought cancellation of the promissory note on the basis that he and Barnett had established a confidential and fiduciary relationship imposing upon Barnett a duty to disclose facts material to the loan transaction, or, alternatively, that Barnett had an affirmative duty to disclose actual knowledge of Hosner's fraudulent activity. Based on the rule of confidentiality set forth in Milohnich, that a national bank owes an implied duty to its depositors not to disclose information to third parties concerning a depositor's account, the trial *925 court directed a verdict against Hooper at the close of the evidence and entered a final judgment on Barnett's counterclaim for amounts owing under the note. The district court reversed and remanded for a new trial, finding that the jury was entitled to weigh any proven duty of disclosure owed to Hooper against Barnett's duty of confidentiality owed to Hosner.
With these facts in mind, we limit our opinion to the following inquiry:
When a bank enters into a transaction with a customer with whom it has established a confidential or fiduciary relationship, and the transaction is one from which the bank stands to benefit at the expense of the customer, does the bank assume a duty to disclose information material to the transaction which is peculiarly within the bank's knowledge and not otherwise available to the customer?
We see nothing wrong with, but much to commend, a rule of law recognizing that under these special circumstances a bank may by its conduct be found to have assumed a duty of disclosure. Accordingly, we answer the inquiry in the affirmative.
Citing Milohnich, Barnett points out that disclosure of information concerning another depositor conflicts with the bank's duty of confidentiality. Milohnich noted that a bank's general duty of confidentiality concerning a depositor's account is qualified, noting that disclosure is permissible: 1) under compulsion of law; 2) pursuant to public interest; 3) pursuant to the bank's interests; or 4) when made with the expressed or implied consent of the customer. While approving these exceptions, we disapprove any language in Milohnich which would preclude a bank from assuming a duty of disclosure under other "special circumstances." Such "special circumstances" may be found where a bank, having actual knowledge of fraud being perpetrated upon a customer, enters into a transaction with that customer in furtherance of the fraud, Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362, 244 N.W.2d 648 (1976), or where a bank has established a confidential or fiduciary relationship with a customer, Tokarz v. Frontier Federal Savings & Loan Association, 33 Wash. App. 456, 656 P.2d 1089 (1982); Klein v. First Edina National Bank, 293 Minn. 418, 196 N.W.2d 619 (1972).
Recognizing the impact of the Milohnich decision upon the banking industry, we are reluctant to formulate a rule of disclosure that will be at tension with the general rule of confidentiality. However, since the usual relationship between a bank and its depositor is one of debtor to creditor, Vassar v. Smith, 134 Fla. 346, 183 So. 705 (1938); Edwards v. Lewis, 98 Fla. 956, 124 So. 746 (1929), not ordinarily imposing a duty of disclosure upon the bank,[*] we do not feel that our decision herein will overly burden the banking industry. Accordingly, we find that where a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer. Where the bank defends its breach of duty on the ground that it owes a conflicting duty of confidentiality to a second customer, the jury is entitled to weigh the one duty against the other.
In the instant case, taking the evidence most favorable to Hooper, the jury could reasonably have found that, prior to the May 14 loan, Riffel had established a confidential relationship with Hooper; that Hooper relied upon this relationship when in a three-way conversation Riffel was put on the phone by Hosner for the purpose of approving the loan; and that at the time Riffel approved the loan he was aware that Hosner was delinquent in loan payments to the bank and was on notice of Stump's *926 suspicions relative to Hosner's fraudulent loan kiting schemes. The jury could also have found that by May 13 the bank considered itself at risk and had made the decision to return all Hosner's checks as being drawn against uncollected funds. The jury was free to consider the unusual circumstances under which the loan was negotiated; that the next working day, Monday, May 17, Hosner checks totaling $270,000 were returned to Barnett by the First American Bank; that, without Hooper's check in the amount of $89,865, the Hosner account would have been overdrawn in the amount of $87,000; and that, with the Hooper deposit, the bank was able to zero out the account and suffer no loss.
In sum, the jury could have found that the bank, having established a confidential or fiduciary relationship with Hooper, entered into a transaction with Hooper from which it was likely to benefit and that at the time of the transaction the bank had special knowledge of material facts which were not otherwise available to Hooper. Given these "special circumstances," the jury could have found that Barnett owed Hooper a duty of disclosure against which the jury was entitled to weigh Barnett's duty of confidentiality owed to Hosner.
Accordingly, we approve the district court's decision reversing the directed verdict and the final judgment and remanding to the trial court for a new trial on all issues.
It is so ordered.
McDONALD, C.J., and ADKINS, OVERTON and BARKETT, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I dissent from the majority opinion because there was nothing in the evidence sufficient to establish that the bank had the relation and duties of a fiduciary with regard to Dr. Hooper and because under the circumstances I do not believe the bank's duty of confidentiality to its other customer can be so lightly swept aside. In the absence of a fiduciary relationship the bank was entitled to concern itself only with respondent's ability to repay the loan and owed no duty to respondent to inform itself about his intended use of the loan proceeds nor to advise or caution him about the wisdom of his intended use. For all the evidence showed, the bank could have been totally ignorant of what Dr. Hooper was going to do with the money or, assuming the bank knew the money would be placed with Hosner, what Hosner planned to do with the money.
Cases cited in the majority opinion itself do not support the majority's conclusion and demonstrate that the evidence in this case fell far short of what is required to create a confidential relationship.
In Tokarz v. Frontier Federal Savings & Loan Association, 33 Wash. App. 456, 656 P.2d 1089 (1982), plaintiffs sought to recover from their lender damages based on the excessive costs of building a house, on the ground that the lender knew about the serious problems being experienced by the building contractor and should not have continued to advance loan funds to the plaintiffs knowing they were using that particular building contractor. The bank itself had discontinued making loans to the builder. The court found that no special circumstances existed to create a duty of disclosure. The lender did not take on any special duties in addition to the ordinary role of lender.
In Klein v. First Edina National Bank, 293 Minn. 418, 196 N.W.2d 619 (1972), the plaintiff sought to recover stock she had pledged as security for the bank's loan to a third party, the plaintiff's employer. At the time of the loan and pledge, the plaintiff was unaware that her employer already owed money to the bank and that certain accounts receivable of the employer, which plaintiff thought could be used when realized to pay back the loan, were already pledged to the bank. Plaintiff's lawsuit was based on the theory that since she placed her trust in the bank, the bank had a duty to disclose these material facts to her. The court held that there was no *927 relationship of trust and confidence and therefore no duty to disclose.
In Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362, 244 N.W.2d 648 (1976), liability for failure to disclose facts material to a transaction was found, but a comparison of that case with the present one shows how far short the present case falls from meeting the applicable test. There the bank's loan officer was so involved in the business of the third party that his failure to disclose facts material to the transaction with the plaintiffs constituted fraud.
In Denison State Bank v. Madeira, 230 Kan. 684, 640 P.2d 1235 (1982), a bank customer claimed the bank had a fiduciary duty to disclose facts concerning a business the customer had purchased, which business the bank already had had substantial dealings with. The court said:
The facts of this case do not take it out of the general rule and are insufficient to support a finding of a fiduciary relationship. Mr. Madeira came to Holton looking for a financially distressed business, or as stated in Koenig [v. Leas, 240 Ind. 449, 165 N.E.2d 134 (1960)], one that was "no bed of roses," and having found one, sought to establish a local banking connection. Being aware of the extensive indebtedness to the Bank, he desired to maintain that Bank's relationship with the business. He knew the Bank stood to benefit by an influx of capital he might put into the business and no affirmative financial misrepresentations are alleged to have been made by representatives of the Bank. The facts which the defendant contends were concealed from him were either a matter of public record or were otherwise readily available if some reasonable effort had been made to ascertain them.
We conclude under the facts of this case that one in the position of Mr. Madeira cannot avoid the responsibility of exercising reasonable diligence for his own protection by relying upon his bank to provide him with information which was not specifically requested and which was otherwise readily available. To adopt such a standard would put an intolerable obligation upon banking institutions and convert ordinary day-to-day business transactions into fiduciary relationships where none were intended or anticipated. Mr. Madeira did testify that he trusted and relied upon the Bank to furnish him complete, honest information. However, one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary. This is particularly true when one, such as Mr. Madeira, is fully competent and able to protect his own interests. The finding of a fiduciary relationship between the Bank and Mr. Madeira is not supported by substantial competent evidence.
Id. at 695-96, 640 P.2d at 1243-44.
Cases decided by Florida courts also show that the present case falls far short of what is required for a relationship of trust and confidence to arise. Cases where a confidential relationship was found all involved far, far more evidence showing some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party. See, e.g., Cripe v. Atlantic First National Bank, 422 So.2d 820 (Fla. 1982); Willis v. Fowler, 102 Fla. 35, 136 So. 358 (1931); Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); Johnston v. Thomas, 93 Fla. 67, 111 So. 541 (1927); Dale v. Jennings, 90 Fla. 234, 107 So. 175 (1925); Williamson v. Kirby, 379 So.2d 693 (Fla. 2d DCA 1980).
In an arms-length transaction, there is no duty on either party to act for the benefit or protection of the other party nor to disclose facts that the other party could by its own due diligence have discovered. Metcalf v. Leedy, Wheeler & Co., 140 Fla. 149, 191 So. 690 (1939); Glass v. Craig, 83 Fla. 408, 91 So. 332 (1922). Moreover, the fact that one party places its trust in the other does not create a confidential relationship *928 in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party. Harris v. Zeuch, 103 Fla. 183, 137 So. 135 (1931).
In George E. Sebring Co. v. Skinner, 100 Fla. 315, 129 So. 759 (1930), a seller-mortgagee agreed to put a certain provision in a mortgage but did not do so. The purchaser-mortgagor did not read the mortgage but signed it relying on the mortgagee's assurance. A confidential relationship, trust and reliance were alleged. This Court observed and concluded as follows:
[I]t seems to us that the circumstances averred in the answer in connection with this transaction were not such as to excuse the defendant through its officer from guarding the company's interest by merely reading the paper and checking its provisions. The officer of the defendant company notwithstanding his excuse that he was busy was not relieved from the duty of protecting his company's interest. And the averments of the answer were not so clear as to Skinner's false statements and fraudulent purposes in this behalf as to create in the other that state of confidence and repose as to render the doing of an ordinarily prudent thing seemingly unnecessary.
While it is true that one cannot by a false representation induce carelessness upon another's part in the matter of signing papers and then profit by such negligence, the policy of the law is that he who will not reasonably guard his own interest when he has reasonable opportunity to do so, and there is no circumstance reasonably calculated to deter him from improving such opportunity, must take the consequences. Where there is such inattention amounting to gross carelessness on the one side and misstatement upon the other and but for the former the latter would not be effective and loss occurs to the inexcusably negligent one, he is remediless. "Not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation, but, first, because the consequences are attributable to inexcusable inattention of the injured party; and second, because the court will not protect those who, with full opportunity to do so, will not protect themselves." See Standard Mfg. Co. v. Slot, 121 Wis. 14, 98 N.W. 923, 927, 105 Am.St.Rep. 1016; Parker v. Parrish, 18 Ga. App. 258, 89 S.E. 381.
Id. at 322-23, 129 So. at 761-62 (emphasis added). While the courts of Florida today would probably not be as tolerant of actual false statements as the Skinner court, on the question of what it takes to create a relationship of trust and confidence, Skinner and Harris v. Zeuch are still good law.
In the present case, the Court relies on evidence of two brief utterances on the part of the bank's employee, Riffel, as grounds for finding a relationship of trust and confidence and resultant fiduciary duties.
There was nothing to show that the bank undertook to provide investment advice to loan customers. Riffel was a loan officer, not an investment adviser. The fact that Riffel told Hooper that Hosner's investments were "sound" is no basis for holding the bank accountable as a fiduciary. Moreover there is no connection between Riffel's comment, made at the time of an earlier loan transaction, and Dr. Hooper's action in borrowing more money to place with Hosner at Hosner's request. Riffel had no way of knowing what would be done with the new loan proceeds. In any event Dr. Hooper could not reasonably have been looking to the bank's loan officer for advice, counsel, and protection on investment matters based on the one comment in evidence. At least, there was not the kind of justifiable reliance that would be necessary in order to find that there was a relationship of trust and confidence.
The fact that Riffel told Dr. Hooper that Hosner's investments had been approved by the IRS carries no weight. Aside from the fact that it is clear neither Riffel nor the bank undertook to provide tax-law advice, the words were nothing more than a *929 statement that Hosner's investments had been determined to be effective as tax shelters. There was no opinion given as to whether they were good investments. That an investment is set up to enable the money invested or the profits made to receive a favorable tax treatment has nothing whatsoever to do with the entirely separate questions of whether the investments are profitable or even secure.
The majority holds that the bank's duty of disclosure, based on a confidential relationship, must be weighed against its duty of confidentiality to its depositor. As I have demonstrated above, there was no relation of trust and confidence with Dr. Hooper, so there was no duty of disclosure, and therefore nothing to weigh. Thus in my view even in the absence of a duty of confidentiality to its depositor, the bank would not be obligated to disclose anything at all to its loan customer Dr. Hooper, with whom it dealt in an arm's-length transaction. There being nothing to weigh in the balance, the duty of confidentiality obviously must prevail. However, I disagree with the Court's requirement of a weighing on the part of the bank when it has a clear duty of confidentiality. Well-settled case law defines the circumstances under which the duty of confidentiality can be relaxed. Any further "special circumstances" providing exceptions are burdensome for financial institutions because their officers are thereby required to predict what a jury will do.
In the field of protecting people against the consequences of their own improvidence, there are limits beyond which courts should not go. In this case this Court has exceeded those limits.
NOTES
[*] Denison State Bank v. Madeira, 230 Kan. 684, 640 P.2d 1235 (1982); Klein; Annot., Existence of Fiduciary Relationship between Bank and Depositor or Customer so as to Impose Special Duty of Disclosure upon Bank, 70 A.L.R.3d 1344, 1347 (1976).