[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#154)
On May 21, 1991, the plaintiff, Florence Krondes, filed a one count lender liability action against the defendant, Norwalk Savings Society. The complaint asserts causes of action which sound in negligence, intentional breach of duty, breach of the implied covenant of good faith and fair dealing, fraud, breach of fiduciary duty, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The complaint was revised on April 23, 1992; however, in so doing, the defendant did not request the plaintiff to separate her causes of action into separate counts.
It is alleged that in January 1986, the plaintiff, a real estate broker, and her late husband, contracted to purchase commercial property located in Norwalk (the Isaac Street property) from William O'Boy Sr. and/or William O'Boy Jr. (the O'Boys). Pursuant to the terms of their contract, the O'Boys were to perform certain repairs and renovations on the property. The plaintiff applied to the defendant for a mortgage, but reconstruction delays postponed the closing. In February 1986, the plaintiff attempted to purchase another parcel of property (the Connecticut Avenue property) from the O'Boys. The Connecticut Avenue property had sustained fire damage, and as with the Isaac Street property, the plaintiff wanted the O'Boys to make repairs and renovations as part of the terms of the sale. Various mortgage commitment letters were executed by the defendant with respect to the Connecticut Avenue CT Page 4363 property, but the plaintiff and the O'Boys never completed the transaction.[1] Meanwhile, the closing took place on the Isaac Street property on March 30, 1987. At the closing, the plaintiff executed a promissory note in the amount of $200,000 payable to the defendant. On November 7, 1990, the defendant (as plaintiff) instituted a foreclosure action based on allegations that the plaintiff defaulted on the mortgage. (Norwalk Savings Society v.Krondes, judicial district of Fairfield at Bridgeport, Docket No. 277459.)
In the revised complaint, the plaintiff alleges that the defendant allowed her to close on the Isaac Street property, but prevented her from closing on the Connecticut Avenue property. The plaintiff alleges that the defendant had a long-standing working relationship with the O'Boys, and therefore, had special knowledge about the O'Boys and the properties that she either purchased or attempted to purchase. The plaintiff bases her claims on the allegation that she relied on the defendant for advice and counsel with respect to her transactions with the O'Boys, and that she specifically asked certain employees of the defendant whether she should be concerned about the integrity and honesty of the O'Boys to meet their obligations with respect to the renovation of the Isaac Street and Connecticut Avenue properties. The plaintiff further alleges that the defendant's employees made affirmative misrepresentations to her with respect to both the O'Boys and the properties.
On May 29, 1992, the defendant filed an answer and two special defenses. In the first special defense, the defendant alleges that the plaintiff's claims are barred by the statute of limitations. In the second special defense, the defendant alleges that the plaintiff was contributorily negligent. On May 29, 1992, the plaintiff filed a reply denying the special defenses.
On October 27, 1994, the defendant filed a motion for summary judgment (#154), supported by a memorandum of law, the affidavit of its vice president, Richard Homberger, transcripts of the plaintiff's deposition testimony, and other documentary evidence. On January 17, 1995, the plaintiff filed a memorandum of law in opposition along with documentary evidence and excerpts of deposition testimony given by the plaintiff and other persons. On January 17, 1995, the defendant filed a reply memorandum of law.
Practice Book § 384 provides that summary judgment "'shall be rendered forthwith if the pleadings, affidavits and any other proof CT Page 4364 submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). The burden is on the movant to show that there is no genuine issue of material fact. Id. A material fact is one that will make a difference in the outcome of a case. Yanow v.Teal Industries, Inc., 178 Conn. 262, 268-69, 422 A.2d 311 (1979). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner,229 Conn. 213, 217, 640 A.2d 89 (1994). In ruling on a motion for summary judgment, the court must view the facts presented in the light most favorable to the non-moving party. Suarez v. DickmontPlastics Corp., supra, 229 Conn. 105.
In the present case, both parties rely heavily on deposition testimony given by the plaintiff, the attorney who represented the plaintiff in her dealings with the defendant, and an employee of the Norwalk Savings Society, to support their respective arguments. In Esposito v. Wethered, 4 Conn. App. 641, 496 A.2d 222 (1985), the court held that:
 The primary purpose of a deposition taken pursuant to [the Practice Book rules] is discovery. . . . A response to a question propounded in a deposition is not a judicial admission. General Statutes § 52-200. At trial, in open court, the testimony [of the witness] may contradict her earlier statement [made at the deposition.] and a question for the jury to decide may then emerge.
Citations omitted.) Id., 645. Because deposition testimony is not a judicial admission and may be contradicted at trial, the movant cannot rely solely upon deposition testimony to establish the nonexistence of any genuine issues of material fact. However, no such prohibition would attach to a non-movant who is attempting to raise a genuine issue of material fact, because even if this testimony is subsequently contradicted at trial, it would nevertheless create a question of fact (as well as a question of credibility) to be resolved by the trier. Thus, even though the deposition testimony offered in opposition to the motion for summary judgment is not a judicial admission, the non-movant may rely on deposition testimony to raise a genuine issue of material CT Page 4365 fact, provided that such testimony is made on personal knowledge and sets forth facts as would be admissible in evidence. See Practice Book § 381.
A. Whether a bank, in the context of a lender-borrowerrelationship, owes a fiduciary duty to the borrower.
A fiduciary relationship may exist where "there is a justifiable trust confided in one side and a resulting superiority and influence on the other." Harper v. Adametz, 142 Conn. 218,225, 113 A.2d 136 (1955). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior-knowledge, skill or expertise and is under a duty to represent the interestsof the other." (Emphasis added.) Dunham v. Dunham, 204 Conn. 303,322, 528 A.2d 1123 (1987).
Ordinarily, there is no fiduciary relationship between a bank and its customer. People's Bank v. Mandel, Superior Court, judicial district of Fairfield, Docket No. 290831 (October 15, 1992, Stodolink, J.); Stoner Group, Inc. v. First Bank of WestHartford, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 702822 (July 27, 1992, Aurigemma, J.);Cooper v. Burby, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 387563 (April 29, 1992, Satter, S.T.R.). See also; Barnett Bank of West Florida v. Hooper,498 So.2d 923, 925 (Fla. 1986); Richfield Bank Trust Co. v. Sjogren,244 N.W.2d 648 (Minn. 1976); Pigg v. Robertson, 549 S.W.2d 597, 600
(Mo.Ct.App. 1977); Simmons v. Jenkins, 750 P.2d 1067, 1070 (Mont. 1988); First National Bank Trust v. Brakken, 468 N.W.2d 633, 637
(N.D. 1991); Umbaugh Pole Bldg. Co., Inc. v. Scott, 390 N.E.2d 320,323 (Ohio 1979); Tokarz v. Frontier Federal Savings Loan Assn.,656 P.2d 1089, 1092 (Wash.App. 1982). "No per se fiduciary relationship exists by virtue of the borrower-lender relationship between a bank and a customer . . . without exceptional circumstances that would establish the existence of a confidential relationship."Torke v. FDIC, 761 F. Sup. 754, 757 (D.Colo 1991).
"[B]ecause the circumstances which may create a fiduciary relationship are so varied, it is extremely difficult . . . to formulate a comprehensive definition of it that would fully and adequately embrace all cases." Steelvest, Inc. v. ScansteelService Center, 807 S.W.2d 476, 485 (Ky. 1991). The relevant inquiry is whether there was "an undertaking in which a duty is created in one person to act primarily for another's benefit in CT Page 4366 matters connected with such undertaking." Id. A fiduciary relationship may arise where there is a long history of dealings between the plaintiff and the bank, and where the bank acts as the plaintiff's financial advisor; Simmons v. Jenkins, supra, 750 P.2d 1070;Pulse v. North American Land Title Co., 707 P.2d 1105, 1110
(Mont. 1985); or where the bank gains the confidence of the borrower and purports to act or advise with the borrower's interests in mind. Lambert Plumbing v. Western Security Bank,934 F.2d 976, 984 (8th Cir. 1991).
 [W]here a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts to the transaction, peculiarly within its knowledge. and not otherwise available to the customer.
(Emphasis added.) Barnett Bank of West Florida v. Hooper, supra, 498 So.2d 925. Special circumstances may exist where: (1) the bank performed an extra service for the plaintiff, in addition to loaning money to the plaintiff; (2) the bank received an economic benefit from the transaction over and above the economic benefit that it would derive from a normal mortgage transaction; (3) the bank exercised extensive control over the refurbishment of the properties; or (4) the bank was asked if there were any legal actions pending with respect to the properties that the plaintiff was purchasing. Tokarz v. Frontier Federal Savings Loan Assn.,
supra, 656 P.2d 1094.
"[T]he borrower or party reposing the confidence must be in a position of inequality, weakness or lack of knowledge. . . ." FirstNational Bank Trust Co. v. Brakken, supra, 486 N.W.2d 637. Nevertheless, the plaintiff "cannot avoid the responsibility of reasonable diligence for his own protection by relying upon his bank to provide him with information which was not specifically requested and which was otherwise readily available." DenisonState Bank v. Madeira, 640 P.2d 1235, 1243 (Kan. 1982). "[O]ne may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." Id, 1243-44. CT Page 4367
In Cooper v. Burby, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 387563 (April 29, 1992, Satter, S.T.R.), the court was faced with a situation in which the mortgagor claimed that a fiduciary duty arose out of the bank's superior knowledge and unequal bargaining power and its alleged awareness that the mortgagor trusted the bank. In ruling in favor of the bank, the court held that:
 There may be unequal situations where a bank as mortgagee lender may be the fiduciary of the mortgagor borrower, such as where the bank becomes a financial advisor of the borrower or where the borrower requests mortgage insurance and the bank is then under a duty to disclose the mechanics of procuring such insurance. Stone v. Davis, 419 N.E.2d 1094, 1097 (Ohio 1981). But normally the bank and its customer stand at arms length. The bank has a right to further its own interest in a mortgage transaction and is under no duty to represent the customer's interest. For the law to impose such a duty would alter the debtor-creditor relationship and preclude banks from making a profit out of the transaction.
Id. In Clay v. FDIC, 934 F.2d 69 (5th Cir. 1991), the court held that there was no breach of fiduciary duty where the transactions were conducted at arms length and the borrower was represented by counsel. Id., 72. In Torke v. FDIC, supra, the court found that no fiduciary relationship was created even though the defendant bank put the plaintiff-borrower in touch with several people to work on his development project, the bank controlled the plaintiff's loan disbursements, and the bank took an active interest in obtaining the required zoning permits for the property. Id., 761 F. Sup. 757
. In so finding, the court ruled that "[t]hese activities were all within the normal course of business between a developer-borrower and a lending institution and do not constitute special circumstances to establish a joint venture or a fiduciary relationship." Id.
However, in Richfield Bank Trust Co. v. Sjogren, supra, the court held that the bank breached its fiduciary duty where the bank's loan officer was so involved in the business of a third party that his failure to disclose facts material to the transaction with the plaintiffs constituted fraud. Id., 651-52. CT Page 4368 "[O]ne who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose . . .; and one who stands in a confidential or fiduciary relation[ship] . . . must disclose material facts."Tokarz v. Frontier Federal Savings Loan Assn., supra, 656 P.2d 1092.
In the present case, it is not disputed that the plaintiff was represented by an attorney when she purchased the Isaac Street property, and when she was attempting to purchase the Connecticut Avenue property. (Affidavit of Richard Homberger, ¶ 9; plaintiff's deposition, pp. 56 and 261-62.) It is not disputed that the plaintiff and the defendant did not have a banking relationship prior to the time that she applied to the defendant for mortgages on the properties. (Plaintiff's deposition, p. 55.) It is also not disputed that the O'Boys had a long term banking relationship with the defendant.
The plaintiff's deposition testimony reveals that she thought that she was part of a "project" or partnership with the bank, and that she relied on the bank to provide her with counsel and advice. (See, e.g., plaintiff's deposition at pp. 243 and 254.) Despite the plaintiff's subjective feelings, she has not presented any evidence that the defendant or its employees expressly or impliedly assumed the role of the plaintiff's advisor or counsel, or performed extra services (beyond those services normally performed by a lender) for the plaintiff.
Likewise, the plaintiff's belief that the bank was responsible for overseeing the renovation of the properties and for curing any zoning inadequacies is also misplaced. (Plaintiff's deposition, pp. 90 and 255.) The documentary evidence submitted by the defendant does not state that it agreed to oversee the O'Boys' refurbishment of the properties, or that it agreed to guarantee that the O'Boys' work would conform to the local zoning regulations. Rather, the refurbishment of the properties appears to be the subject of agreements between the plaintiff and the O'Boys. Furthermore, the plaintiff states in her deposition that the defendant's officers never represented to her that they would oversee the renovations that the O'Boys agreed to perform on the properties. (Plaintiff's deposition, p. 256.)
The plaintiff, in opposing the motion for summary judgment, stresses the fact that she is a widow, who despite being an experienced residential real estate broker, lacked knowledge with CT Page 4369 respect to commercial real estate. The plaintiff argues that she was purposely deprived of pertinent information by the defendant's officers. The plaintiff also alleges that she relied on the; defendant for appraisals, valuation and income projections with respect to the properties.
These facts, by themselves, do not justify the plaintiff's reliance on the bank as a source of information. The plaintiff states in her deposition that despite knowing that both properties were damaged by fires and despite her suspicions of arson, she did not investigate the fires on her own (or request her attorney to do so), and did not obtain official reports on the fires until 1989. (Plaintiff's deposition, pp. 55-56 and 195-96.) The plaintiff states that she did not inspect the Isaac Street premises prior to the closing date because she had established a friendship with the O'Boys. (Plaintiff's deposition, p. 166.) The plaintiff also states that prior to her purchase of the Isaac Street property, she consulted with an experienced commercial real estate broker with respect to the viability and valuation of both of the properties.
Once again, the plaintiff's subjective reliance on the defendant must be justifiable. The plaintiff must act with reasonable diligence to obtain information that is a matter of public record, such as official reports of fire investigations, and must take reasonable measures to protect her interests. Ordinarily, a bank does not have a duty to perform appraisals and income projections on behalf of a borrower. Furthermore, there is no evidence that the defendant agreed to provide these services to the plaintiff, and the plaintiff's subjective belief that the defendant had a duty to provide her with such services does not by itself make the defendant a fiduciary with a duty to insure the plaintiff against the risks associated with investing or speculating in commercial real estate.
Nevertheless, the plaintiff states that on numerous occasions, she asked the defendant's officers for information that was exclusively within the defendant's knowledge, and which was not' available through other sources. The plaintiff contends that the defendant's officers failed to disclose that a legal action was pending against the O'Boys with respect to the Isaac Street property, and that the officers were deposed with respect to that action. (Plaintiff's deposition, p. 86.) The plaintiff contends that the defendant, while giving her a mortgage commitment for the Connecticut Avenue property, failed to disclose to her that William O'Boy Sr. quitclaimed the property to William O'Boy Jr., and that CT Page 4370 William O'Boy Jr. sold the property to someone else while continuing to negotiate with the plaintiff. (Plaintiff's deposition, pp. 141 and 145.) The plaintiff also contends that when she became suspicious of the O'Boys and posed questions to the defendant's officers about the O'Boys' integrity and honesty, the officers either refused to comment or told her that the O'Boys were reputable.
The plaintiff's statements are sufficient to raise genuine issues of material fact with respect to whether the defendant was in possession of facts which were not otherwise available to the plaintiff, and whether the plaintiff was justified in relying on the defendant to disclose these exclusive facts. While these issues of fact do not by themselves create a fiduciary duty in the defendant, they render this case inappropriate for summary judgment.
The present case is further complicated by the rule that a bank owes a duty of confidentiality to its customers. Tokarz v.Frontier Federal Savings Loan Assn., supra, 656 P.2d 1092; FirstNational Bank Trust Co. v. Brakken, supra, 468 N.W.2d 637. "Where the bank defends its breach of duty on the ground that it owes a conflicting duty of confidentiality to a second customer, the jury is entitled to weigh the one duty against the other."Barnett Bank of West Florida v. Hooper, supra, 498 So.2d 925. Thus, in the present case, any duty that the defendant may have had to disclose information to the plaintiff (assuming that the plaintiff could prove that such a duty exists) must be weighed against the duty of confidentiality that the defendant owed to its long time customers, the O'Boys. The nature of this conflicting duty is an issue for the trier of fact.
B. Whether the Plaintiff's claims are barred by the applicable;statutes of limitation.
The defendant moves for summary judgment on the ground that the plaintiff's tort claims are barred by the three year statute of limitations contained in General Statutes § 52-577, and on the ground that the plaintiff's CUTPA claim is barred by the three year statute of limitations contained in General Statutes § 42-110g(f).
The defendant submits evidence which shows that the closing on the Isaac Street property occurred on March 30, 1987, and that the final mortgage commitment letter for the Connecticut Avenue property expired on February 11, 1988. These dates are not CT Page 4371 disputed by the plaintiff. It is also not disputed that the present action was commenced on May 14, 1991.
The defendant argues that the tortious acts and unfair trade practices alleged by the plaintiff had to occur on or before either March 30, 1987 or February 11, 1988, and therefore, that the plaintiff's claims are time barred. In response, the plaintiff argues that the defendant has arbitrarily selected dates which may be relevant for purposes of calculating the statute of limitations for the plaintiff's breach of contract claims, and applied those dates to the plaintiff's tort and CUTPA claims. The plaintiff also argues that the applicable statutes of limitation were tolled because the defendant concealed its fraudulent activities from the plaintiff.
The evidence and testimony that is presently before the court is insufficient for purposes of determining whether the plaintiff's claims are time barred. These issues cannot be resolved in the context of this motion for summary judgment, and therefore, must be resolved upon the trial of this matter.
C. Whether the Plaintiff's complaint states legally sufficientclaims for breach of the duty of good faith and fair dealing andfor violation of CUTPA.
In the present case, the plaintiff chose to plead multiple causes of action within a single count complaint, with certain paragraphs that state factual allegations and other paragraphs that state legal theories. No single paragraph can be interpreted as stating a complete cause of action or claim for relief, as each legal theory appears to be based on some or all of the factual allegations which are stated in other paragraphs of the complaint.
As a threshold issue, the court should note that there is some question as to whether a motion for summary judgment may be used to test the legal sufficiency of a complaint. Burke v. Avitabile,32 Conn. App. 765, 772, 630 A.2d 624 (1993). Nevertheless, in BoucherAgency v. Zimmer, 160 Conn. 404, 279 A.2d 540 (1971), the court ruled that a motion for summary judgment may be used to test the legal sufficiency of a complaint after an answer has been filed, and then, only "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id., 409. Since the present case is replete with genuine issues of material fact, a motion for summary judgment is not the CT Page 4372 appropriate procedure for testing the legal sufficiency of the complaint. Even if the defendant had filed a motion to strike, the motion would be denied because a motion to strike cannot be used to remove individual paragraphs from a complaint where the challenged paragraphs do not state a complete cause of action. See Jaramillov. Addis, 8 CSCR 660 (May 5, 1993, Ballen, J.); The Grove-Corporationv. Tinty, 3 Conn. L. Rptr. 647, 649 (January 4, 1991, Hennessey, J.), quoting Donovan v. Davis, 85 Conn. 394, 397,82 A. 1025 (1912); Ahsan v. Olsen, 3 CSCR 55 (November 9, 1987, Wagner, J.).
Accordingly, the defendant's motion for summary judgment is denied.
COCCO, JUDGE